INGRAM, Judge.
On October 29, 1986, Thomas Clinton Hudson filed for a divorce from Deborah Hooks Hudson in the Jefferson County Circuit Court. Prior to trial, the wife filed a request for production of documents, seeking all tape recordings of telephone and other conversations involving the wife and third parties. In response to the request, 26 tape recordings of the wife’s conversations with others, including her husband, which had been made without her knowledge, were produced. The wife’s motion to suppress was denied. Trial was begun on May 19, 1987, and wife’s counsel again objected to the use of the tapes that had been produced by the husband. The court deferred ruling on the admissibility of the tapes at that time.
*618 During the trial, the wife was called by the husband as an adverse witness under Rule 43(b), Alabama Rules of Civil Procedure. She was repeatedly asked questions framed from the substance of at least three of the tapes produced by the husband. The trial court permitted the use of the tapes for impeachment and to refresh the wife’s recollection. This was allowed over the wife’s objections that the utilization in the trial of the illegally obtained tapes was in violation of the federal Omnibus Crime Control and Safe Streets Act of 1968 (Title III) and the state eavesdropping statute.
On June 19,1987, the court issued a final judgment of divorce, awarding custody of the children to the husband and dividing the marital assets. On June 30, 1987, the wife filed a motion for new trial or, in the alternative, to alter or amend the judgment. The court denied the motion, and the wife appeals.
The wife contends that the court erred in allowing the tapes to be used in evidence at trial. She also argues that the court erred in its determination of child custody, property division, and alimony.
The wife argues that the judgment of the court concerning the admission or utilization of the tapes is in error, due to the decision of the Supreme Court of Alabama in Ex parte O’Daniel, 515 So.2d 1250 (Ala.1987). The decision in Ex parte O’Daniel was rendered on June 12, 1987, immediately prior to the judgment of divorce in the present case. The decision was also prior to the wife’s motion for new trial or, in the alternative, to alter or amend the judgment, which was made on June 30, 1987. In O’Daniel, the court held that the federal wiretapping statute applies to spousal wiretapping[1] and prohibits the use of taped conversations in a matrimonial action where the wiretapper is not a party to the conversation or does not have the consent of either party to the conversation. The federal wiretapping statute is Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520. Section 2515, 18 U.S.C., specifically provides:
“Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.” (Emphasis added.)
Section 2511(1), 18 U.S.C., states:
“Except as otherwise specifically provided in this chapter any person who—
“(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;
[[Image here]]
“(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection ...
[[Image here]]
“shall be fined not more than $10,000 or imprisoned not more than five years, or both.”
We note that an exception is provided in 18 U.S.C. § 2511(2)(d) when the wiretapper is a party to the recording or has prior consent of a party to the communication.
Although some courts have held that Title III does not cover interspousal interception, our supreme court found that, under the better reasoning, Title III makes no exception to interspousal wiretapping. Leaving no room for question as to the course Alabama will follow, the supreme court cited Pulawski v. Blais, 506 A.2d 76 (R.I.1986), as follows: “If Congress had intended to exempt spousal wiretappings *619 from the scope of Title III, they would have explicitly done so.” Pulawski, 506 A.2d at 77, n. 2.
The husband contends that the case of O’Daniel should have no bearing on this case, arguing that it is applicable only prospectively because, at the time of the supreme court’s decision in O’Daniel, the case at hand had already been tried. The husband argues that when an appellate court announces a decision that is a clear break with the past and in conflict with old standards relied upon, the application is prospective. Thus, the husband argues that O’Daniel should be applied only to cases tried after June 12, 1987. We do not agree with appellee’s contention, because the decision is not a clear break with past standards. Although Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974), cert. denied, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974), is a Fifth Circuit case which, though it ruled, in effect, that inter-spousal interception was not prohibited by 18 U.S.C. § 2510, it concluded its opinion with the following caveat:
“As should be obvious from the foregoing, we are not without doubts about our decision. However, we have concluded that the statute is not sufficiently definite and specific to create a federal cause of action for the redress of appellant’s grievances against her former husband. Our decision is, of course, limited to the specific facts of this case. No public official is involved, nor is any private person other than appellee, and the locus in quo does not extend beyond the marital home of the parties.”
Simpson, 490 F.2d at 810.
The contrary interpretation was expressed clearly in the case of Pritchard v. Pritchard, 732 F.2d 372 (4th Cir.1984), where that court had little trouble in stating that no exception existed nor was one contemplated by the Congress in its enactment of 18 U.S.C. §§ 2510-2520. In fact, the Pritchard court speaks of the clarity and lack of ambiguity in the language of the federal statute to the extent that it is “not susceptible to the engrafting of an interspousal exception.” The Pritchard court went on to distinguish Simpson, as follows:
“Although we agree with Simpson to the extent that it stands for the narrow proposition that state and not federal courts are better suited to handle domestic conflicts, 490 F.2d at 805, we find that Title III prohibits all wiretapping activities unless specifically excepted. There is no express exception for instances of willful, unconsented to electronic surveillance between spouses.”
Pritchard, 732 F.2d at 374.
The Simpson case did not provide a clear standard to follow because of the sharp split between the various jurisdictions on the issue of interspousal interception. As we held in Hagler v. Ford Motor Credit Co., 381 So.2d 80 (Ala.Civ.App.1980),
“[ojrdinarily a decision of a federal appellate court on a federal question, absent a ruling by the United States Supreme Court, is binding on the state courts of Alabama. [Cites omitted.] However, when the decisions are in conflict we believe that we are free to follow and apply the better reasoned decision.”
Hagler, 381 So.2d at 82.
Thus, the federal decisions were in conflict, and the trial court was not bound to follow the decision of the Fifth Circuit involving interspousal interception. Because there was no clear standard, it is not required that O’Daniel be applied prospectively only.
As to the husband’s argument that the tape recordings were properly admitted for impeachment purposes, we follow the reasoning in Anthony v. United States, 667 F.2d 870 (10th Cir.1981), which states:
“Hence, we conclude that Congress did not intend to authorize the use of illegally obtained evidence for impeachment purposes. We deem this conclusion reasonable in light of the overall purposes of Title III of the Omnibus Crime Control and Safe Streets Act....”
Anthony, 667 F.2d at 880.
We find, therefore, in light of the recent Alabama Supreme Court decision in O’Daniel, that the tape recordings were clearly illegal interspousal interceptions, *620 and the wife’s motion for new trial should have been granted.
Appellee contends that the tapes from only two occasions were played for the court. One consisted of the wife’s side of a radio-telephone communication, and the other a conversation between the wife and Jerry Calhoun, which was recorded in an automobile. A voice-activated tape recorder hidden in the automobile was used. On neither of these recording occasions did the wife or Jerry Calhoun have knowledge of the presence of the hidden recorder. Ap-pellee would, however, have us believe that the wife had no expectation of privacy in such situations and cites us to United States v. Rose, 669 F.2d 23 (1st Cir.1982), cert. denied sub nom. Hill v. United States, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982), where a “ham” radio was used to transmit messages in illegal drug trafficking. The court there held that such communication was neither “wire” nor “oral” and therefore not subject to the restrictions of Title III, supra. The Rose court went on to say that 18 U.S.C. § 2510(2) is interpreted as requiring the speaker to have a “subjective expectation of privacy that is objectively reasonable.” The “ham” operators there switched frequencies during the course of their transmissions, did not identify their stations, and used codes to disguise the content of their communications, all of which were adequate to show that those defendants did not have a genuine subjective expectation of privacy. We fail to find where Rose supports the husband’s contention that the wife was not entitled to an expectation of privacy on these two occasions.
The prejudicial nature of the contents of the tapes undoubtedly influenced the decision of the trial court in the awards of child custody and alimony and in the division of marital property. Thus, the judgment below is due to be reversed and the cause remanded for a new trial, with directions that the tapes made under circumstances where neither party to the conversation involved was aware of the interception and had not agreed thereto, are not admissible or usable for any purpose.
REVERSED AND REMANDED WITH DIRECTIONS.
BRADLEY, P.J., concurs.
HOLMES, J., dissents.

. Although the federal statute is herein generally referred to as the "federal wiretapping statute,” other words and phrases such as “wiretapper” and "interspousal interception” are used synonymously in reference to the statute.