**Lyle M. RICE, Appellant,**

v.

**Deborah J. RICE, Dana Newell, Daniel R. Carter, Charles B. Fitzgerald, Charles M. Fitzgerald, Daniel R. Carter, Appellees.**

No. 90–2647.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1991.

Decided Dec. 23, 1991.

Rehearing and Rehearing En Banc Denied Feb. 10, 1992.

Thomas E. Hankins, Gladstone, Mo., argued, for appellant.

William A. Lynch, Kansas City, Mo., argued (Robert G. Russell, Sedalia, Mo., and John P. Jennings, Jr., Kansas City, Mo., on brief), for appellees.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

ROSS, Senior Circuit Judge.

Lyle M. Rice appeals the district court's [1] order denying his motion for summary

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

judgment and granting summary judgment to his ex-wife, Deborah J. Rice, Deborah's father, Dana Newell, and Deborah's attorney, Daniel R. Carter, in this action for damages under the Federal Wiretapping Act (Act), 18 U.S.C. §§ 2510–2521. We affirm.

## I.

The essential facts are not in dispute. After sixteen years of marriage, Lyle M. Rice and Deborah J. Rice divorced in July of 1988. Deborah was awarded primary custody of their two children. After the divorce, Lyle and Deborah continued to have disagreements about child visitation arrangements. During a meeting with her attorney, Daniel R. Carter, Carter suggested that one way Deborah could document the visitation arrangements was to install a recording device to her telephone. Carter later researched the issue and determined that *Kempf v. Kempf,* 677 F.Supp. 618 (E.D.Mo.1988) (*Kempf I*), and *Platt v. Platt,* 685 F.Supp. 208 (E.D.Mo.1988) (*Platt I*), permitted the installation and use of a recording device on Deborah's telephone.

Based on Carter's advice, Deborah installed a recording device to her bedroom telephone and she instructed her children

not to use that telephone. Despite her instructions, the children used their mother's bedroom telephone on various occasions while talking to their father. As a result, conversations between the children and Lyle were recorded during the period of September 1988 through February 1989.

On February 21, 1989, *Kempf I* was reversed by this court in *Kempf v. Kempf,* 868 F.2d 970 (8th Cir.1989) (*Kempf II*). In *Kempf II,* we held that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521, also known as the Federal Wiretapping Act, prohibited the wiretapping of telephone communications within the marital home.[2] *Id.* at 973. The day after *Kempf II* was filed, *Platt I* was also reversed, but without opinion. *Platt v. Platt,* 873 F.2d 1447 (8th Cir.1989).

At some point, Lyle learned that some of his conversations with his children had been recorded by Deborah and that edited copies of the recordings had been distributed to others by Deborah and her father, Dana Newell. On August 25, 1989, Lyle filed the underlying action against Deborah, Dana Newell, Daniel R. Carter, and members of Carter's law firm, alleging violations of the Act, and raising several state tort claims for "tortious invasion of privacy."[3]

---

2. 18 U.S.C. § 2511 provides:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication;

. . .

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the inter-

ception of a wire, oral, or electronic communication in violation of this subsection; or

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

3. Specifically, Lyle alleged that Deborah recorded his conversations with his children, edited the tapes "to portray Plaintiff in a false and unflattering light," distributed copies of the edited recordings to others, and attempted to use the recordings against him in a state court proceeding in April, 1989, in violation of the Act (Count I); that Dana Newell installed the recording device on Deborah's telephone and distributed copies of the taped conversations to others, in violation of the Act (Count III); and

On cross-motions for summary judgment, the district court denied appellant's motion for summary judgment and granted summary judgment to the defendants on the ground that defendants were entitled to the protection of the "good faith reliance" defense under 18 U.S.C. § 2520(d)(3), and that the application of *Kempf II* in this case " 'would constitute a species of retroactive application of the law.' " *Rice v. Rice*, No. 89–0806–CV–W–3, slip op. at 9 (W.D.Mo. Sept. 4, 1990) (quoting *Kratz v. Kratz*, 477 F.Supp. 463, 483 (E.D.Penn. 1979)). The district court found undisputed evidence that Deborah acted upon her attorney's determination that the Act permitted the wiretapping and that she had no intention of violating the law. The district court also found undisputed evidence that Carter's advice was based upon his research of the law at the time the recording device was installed.

## II.

We review the district court's grant of summary judgment under the same standard applied by the district court. *Federal Deposit Ins. Corp. v. Kasal*, 913 F.2d 487, 489 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991). We should affirm the district court's grant of summary judgment if, viewing the evidence in the light most favorable to the non-moving party, the full record discloses that there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c).

## III.

■ Appellant contends that the district court erred in granting defendants' motion for summary judgment on the basis of the "good faith reliance" defense, 18 U.S.C. § 2520(d)(3), because the defense does not exist except in cases involving a person or entity providing an electronic communication service to the public. We agree. Section 2520(d)(3) provides:

> (d) Defense.—A good faith reliance on—
>
> . . .
>
> (3) a good faith determination that section 2511(3) of this title permitted the conduct complained of;
>
> is a complete defense against any civil or criminal action brought under this chapter or any other law.

Section 2520(d)(3) specifically limits the "good faith reliance" defense to "a good faith determination that *section 2511(3)* . . . permitted the conduct complained of." (Emphasis added). Looking to section 2511(3),[4] it is clear that the defense is referenced solely to the conduct of persons or entities providing electronic communication service to the public. 18 U.S.C. § 2511(3). Further, the legislative history to section 2520(d)(3) makes reference solely to the conduct of communication service providers

that Daniel R. Carter, as Deborah's attorney, advised Deborah to install the recording device on her telephone and attempted to use the recorded conversations against plaintiff in a state court proceeding, in violation of the Act (Count V).

4. 18 U.S.C. § 2511(3) provides in relevant part:
(a) Except as provided in paragraph (b) of this subsection, a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication . . . to any person or entity other than an addressee or intended recipient of such communication . . .;
(b) A person or entity providing electronic communication service to the public may divulge the contents of any such communication—
(i) as otherwise authorized in section 2511(2)(a) . . . of this title;

(ii) with the lawful consent of the originator or any addressee or intended recipient of such communication;
(iii) to a person employed or authorized, or whose facilities are used, to forward such communication to its destination; or
(iv) which were inadvertently obtained by the service provider and which appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency.
18 U.S.C. § 2511(2)(a)(ii) provides that wire or electronic communication service providers are authorized by law to intercept wire, oral, or electronic communications if the provider has been provided with a court order or a written certification by a law enforcement officer or the United States Attorney General.

or their employees. S.Rep. No. 541, 99th Cong., 2d Sess. 26–27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3580–81. Therefore, it is clear that 18 U.S.C. § 2520(d)(3) does not provide a "good faith reliance" defense to private actors, such as the defendants. For that reason, we do not rely on that portion of the district court's decision which granted summary judgment to defendants on the basis of the "good faith reliance" defense under 18 U.S.C. § 2520(d)(3).

### IV.

■ Next, appellant argues that he was entitled to have *Kempf II* applied retroactively and summary judgment granted in his favor.

[W]hether to apply a change in decisional law retroactively in a particular case is governed by the three-factor test of *Chevron Oil v. Huson,* 404 U.S. 97 [92 S.Ct. 349, 30 L.Ed.2d 296] (1971). These factors, sometimes referred to as the reliance, purpose, and inequity factors, are: (1) whether the decision establishes "a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed;" (2) whether retroactive application will advance or retard operation of the new rule, determined by looking to the history, purpose, and effect of the rule; and (3) whether retroactive application will be inequitable in that it would create injustice or hardship.

*Ridgway v. Wapello County,* 795 F.2d 646, 647 (8th Cir.1986) (quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)) (citations omitted).

After considering each of the *Chevron* factors, we agree with the district court that the holding of *Kempf II* should not be retroactively applied in this case. Under the reliance factor of *Chevron* it is undisputed that Carter relied upon both *Kempf I* and *Platt I* when he advised Deborah that she could install a recorder to her telephone. At that time, there was no Eighth

Circuit caselaw on point, and *Kempf I* and *Platt I* represented the state of the law in the Missouri federal district courts and followed the position of the Second and Fifth Circuits on the issue of whether the Act applied to domestic wiretapping. *Kempf II* effectively overruled *Kempf I* and *Platt I.*

In our view, retroactive application would not advance operation of the new rule and, in the circumstances of this case, would be inequitable.

*Kempf I* involved a husband's recording of his wife's telephone conversations within the marital home. In that case, the district court specifically relied upon *Simpson v. Simpson,* 490 F.2d 803 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974), in which the Fifth Circuit concluded that the Act was not intended to apply to a husband's wiretapping of his wife's phone conversations within the marital home. *Kempf I,* 677 F.Supp. at 620–21. In *Platt I,* a woman, while separated from her husband, recorded telephone conversations between her daughter and her husband at her home. In that case, the district court, relying on the factually similar case of *Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir.1977), concluded that the Act did not extend to wiretapping in a " 'purely domestic conflict.' " *Platt I,* 685 F.Supp. at 209.

Although at the time of Carter's research there was another line of cases holding that the Act *was* applicable to domestic wiretapping, *see e.g., Pritchard v. Pritchard,* 732 F.2d 372 (4th Cir.1984); *United States v. Jones,* 542 F.2d 661 (6th Cir.1976); *Nations v. Nations,* 670 F.Supp. 1432 (W.D.Ark.1987), we believe that it was entirely reasonable and appropriate for Carter to rely upon the decisions of *Kempf I* and *Platt I,* issued from within the state in which he practiced law, in advising his client. The circuit courts had split on the proper interpretation and application of the Act in domestic situations, and the issue had not been addressed by this court at that time. Further, we find nothing to indicate that Carter could have predicted the holding in *Kempf II.* As recognized by

the district court in *Kratz v. Kratz*, 477
F.Supp. at 483,

> Lawyers are not soothsayers, and pos-
> sess no crystal balls in which to foresee
> changes in judicial interpretations of the
> law.

> . . . . .

> We cannot as a matter of fundamental
> justice say that individuals act at their
> peril when they reasonably rely upon ju-
> dicial decisions. If the law required oth-
> erwise, we would do better to replace our
> courts with casinos and dispense judg-
> ments by a spin of the roulette wheel.

Based on this reasoning, we believe that it
would be inequitable under *Chevron* to
hold Carter, his client, Deborah, or her
father liable under the Act by the retroac-
tive application of *Kempf II*. We therefore
conclude that the district court did not err
in refusing to retroactively apply the hold-
ing of *Kempf II* or in denying appellant's
motion for summary judgment, and we af-
firm that portion of the district court's
decision.

### V.

With respect to the district court's grant
of defendants' motion for summary judg-
ment, we have reviewed the record in the
light most favorable to appellant and deter-
mined that there is no genuine issue as to
any material fact in this case. Appellant's
assertion that there remains a genuine is-
sue as to whether defendants acted in good
faith reliance upon *Kempf I* and *Platt I* is
without merit. The sworn affidavits filed
in support of their motion for summary
judgment have satisfied defendants' bur-
den of showing that they acted in reliance
upon *Kempf I* and *Platt I*. We therefore
conclude that defendants are entitled to
judgment as a matter of law. Fed.R.Civ.P.
56(c).

Accordingly, we affirm the district
court's denial of appellant's motion for
summary judgment and grant of summary
judgment to defendants in this case.